# EXHIBIT 6

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS GIOVANNELLI, | ) |
| | ) |
| Plaintiff, | ) No. 1:21-CV-01092 |
| | ) |
| v. | ) |
| | ) Judge Edmond E. Chang |
| WALMART, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Nicholas Giovannelli filed this suit against a slew of merchants, alleging violations of the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.*, and negligent infliction of emotional distress. *See* R. 2, Not. of Removal.[1] He filed the case in state court against, specifically, Walmart, Inc., WalMart.Com USA, LLC, The Stocktrek Corporation d/b/a StockTrek Images, Inc., Pixels.Com, LLC, Amazon.Com, Inc., Amazon.Com Services, LLC, and Posterazzi Corp. Invoking diversity jurisdiction, the Defendants removed the case to federal court. *Id.* Now, the Defendants move to dismiss the Complaint, arguing that Giovannelli's claims under the Publicity Act are time-barred and that he fails to adequately state a claim for negligent infliction of emotional distress. R. 9, Defs.' Mot. to Dismiss. The motion to dismiss is denied in part and granted in part. For the reasons discussed in this Opinion, the motion to dismiss the Publicity Act claims (which is really a motion for judgment on the

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number if applicable.

pleadings and, as explained later, *should* be a summary judgment motion) is denied. The motion to dismiss the claim for negligent infliction of emotional distress is granted with prejudice (for reasons discussed below).

## I. Background

In evaluating the motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nicholas Giovannelli is a U.S. Army veteran who served between 2007 and 2015. Compl. ¶ 2. During his time in the military, Army photographers at times took photos of him in combat. *Id.* ¶ 12. At some point, the Defendants began to sell, both in-store and online, posters that contained one (or more, it is not yet clear) of the photos showing Giovannelli in combat—all unbeknownst to him and without his consent. *Id.* ¶¶ 13–14, 16–18, 21–23, 26–28, 31–33, 36–38, 41–43, 46–48. According to Giovannelli, the Defendants owed him a duty not to publicize and sell his image for profit without getting his consent. *Id.* ¶¶ 51, 55, 59, 63, 67, 71, 75. Giovannelli says that Walmart's actions have caused him to suffer extreme emotional distress, including the exacerbation of his already-existent PTSD arising from his time in the military. *Id.* ¶¶ 11, 19, 24, 29, 34, 39, 44, 49, 53, 57, 61, 65, 69, 73, 77.

## II. Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

#### A. Illinois Right of Publicity Act

The Illinois Right of Publicity Act gives individuals the "right to control and to choose whether and how to use an individual's identity for commercial purposes." 765 ILCS 1075/10. The statute prohibits the unauthorized use of personal identity for any commercial purpose. 765 ILCS 1075/30. To succeed on a claim for violation of the Publicity Act, the plaintiff must show three elements: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's

commercial purposes. *Id.* Giovannelli alleges that the Defendants used photos of him without his consent to sell as posters online and in stores. *E.g.*, Compl. ¶¶ 13–14.

The Defendants' motion to dismiss purports to be a Rule 12(b)(6) motion, arguing that the claims must be dismissed for failure to state a claim. Defs.' Mot. to Dismiss at 1. But that is not substantively what the Defendants argue when it comes to the Publicity Act claims. The Defendants actually assert that Giovannelli's claims under the Publicity Act are time-barred. *Id.* at 3–4. Neither side disputes that the statute of limitations for claims under the Publicity Act is one year (more on that below). Instead, the parties disagree as to when Giovannelli's claims accrued for purposes of starting the limitations clock (and from there, whether the claims were filed beyond the one-year statute of limitations). The Defendants say that the violation accrues once, specifically at the time that the photos were *first* published. Defs.' Mot. to Dismiss at 4. On the other side, Giovannelli contends that the discovery rule and the continuing-tort rule both apply so that his claims accrued either at the time he discovered the violation, Pl.'s Br. at 3–4, or on the date of the last injury, *id.* 4–5.

Before getting to these arguments, the Court points out a threshold problem for the defense's dismissal motion: Rule 12(b)(6) motions test the adequacy of the legal claim—not its timeliness. *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (citing Fed. R. Civ. P. 8(c)). The statute of limitations is an affirmative defense, Fed. R. Civ. P. 8(c)(1), and "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Indeed, the Seventh Circuit has noted that

4

dismissal under Rule 12(b)(6) on the basis of the statute of limitations is "irregular." *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (citing Fed. R. Civ. P. 8(c)). There is an exception to the rule: where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely," *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (cleaned up). But that exception does not apply here. Because the statute of limitations is an affirmative defense, the dismissal that the Defendants seek based solely on examining the complaint (they have not filed an answer yet) is really a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up). Having said that, as explained next, the motion cannot be decided just on the pleadings, so the only right way to assert the limitations defense this early in the case would have been to seek leave to file an early summary judgment motion.

On review of the Complaint, the pleading does *not* plainly reveal that Giovannelli's claims are definitively time-barred. The Defendants argue that Giovannelli has pleaded himself out of court by alleging that, "upon information and belief," Walmart started selling the photos of Giovannelli as posters some time before 2020. Compl. ¶ 16; Defs.' Mot. to Dismiss at 3–4. By Walmart's way of thinking, Giovannelli's assertion that he believes that the photos were sold for the first time before 2020 means that this January 2021 lawsuit is clearly untimely. But this is not the "gotcha" moment that the defense thinks it is. Giovannelli's allegation on when the posters were

5

first sold is exactly what it says it is: a belief. The Complaint makes it clear that he does not yet know the exact date that the photos were first published—and he does not have to at this early stage of the case. Those facts should be uncovered in discovery, and need not be pleaded in anticipation of an affirmative defense.

Indeed the parties' disagreements on whether the discovery rule or the continuing-tort rule would apply to the Publicity Act claims highlight the need for discovery before deciding the limitations defense. From Giovannelli's perspective, he did not discover that his image was being sold by Walmart in particular until July 11, 2020, so under the discovery rule, his January 2021 lawsuit would timely. Pl.'s Br. at 3–4. "Like the continuing violation rule, the discovery rule is an equitable exception to the ordinary rule that the statute of limitations begins to run with the accrual of the cause of action." *Rodrigue v. Olin Emples. Credit Union*, 406 F.3d 434, 444 (7th Cir. 2005). Under the discovery rule, "the statute of limitations is tolled until such time as the plaintiff knew, or in the exercise of reasonable diligence should have known, that she was injured, the cause of her injury, and that there was some indication of wrongdoing." *Id.* The rule is "designed to eliminate the unfairness that would result to a plaintiff whose right to bring an action for an injury is cut off before she is aware of the existence of such action." *Golla v. Gen. Motors*, 657 N.E.2d 894, 899 (Ill. 1995). "At some point, the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the

6

running of the limitations period commences." *Daubach v. Honda Motor*, 707 N.E.2d 746, 750 (Ill. App. Ct. 1999).

The defense says that the discovery rule cannot save the timeliness of Giovannelli's lawsuit because "the discovery rule has been rejected for Plaintiff's claims under established Illinois law." R. 12, Defs.' Reply at 2–3. But there is not yet enough information about Giovannelli's claims to know whether the discovery rule could apply here. R. 16, Pl.'s Surreply at 2–3. Illinois courts *do* apply the discovery rule when a publication was "hidden, inherently undiscoverable, or inherently unknowable." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 435 (7th Cir. 2009) (cleaned up). Based on the current Complaint—which need not plead around the limitations defense—the Court cannot say for sure whether the publication was hidden or undiscoverable in some way. There is just not enough information yet. The Complaint says that the posters were sold online but, for example, did the website have an image of the poster or just describe it? Even if an image was displayed, was it a small thumbnail image, and does the poster itself contain just Giovannelli, or instead many others in a way that made it difficult to see him? Indeed, at this stage, the record does not even contain a copy of the photo (or photos) in question. Discovery is needed to evaluate whether the discovery rule applies.

On the continuing-tort rule, Giovannelli argues that the repeated sale of his photo over a period of time was a continued violation, so the limitations period would not begin until the last date of injury. Pl.'s Br. at 4–5. When the tort at issue involves a continuing or repeated injury, courts will indeed sometimes hold that the statute of

7

limitations had not started to run until sometime after the first instance of the tort. *Blair*, 859 N.E.2d at 1192 ("Under the 'continuing violation rule,' where a tort involves a continuing or repeated injury the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease."). Where the damages flow from a single overt act, however, the statute begins to run on the date that the defendant inflicted the injury, and this is so even if the ill effects are ongoing. *Id.* (citing *Feltmeier*, 798 N.E.2d at 85 (Ill. 2003)). In *Blair*, the court held that, even though a picture of the plaintiff was used repeatedly over a period of time, the picture was used for the single purpose of advertising and thus did not "denote a continuing course of conduct for which the limitations period can be tolled." *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1046 (N.D. Ill.), *aff'd*, 653 F. App'x 482 (7th Cir. 2016) (citing *Blair*, 859 N.E.2d at 1193). But again, there are not yet enough facts in this case to determine if the posting and sale of Giovannelli's photo was a single injury or a repeated injury. For example, at this stage the Court does not know—and perhaps neither does Giovannelli—if the poster appeared exactly the same each time it was posted or if it was altered across time or across marketing channels. These facts are important because a republication can, in certain circumstances, give rise to a continuing violation or a separate violation with a later-arising cause of action "if the publication is altered so as to reach a new audience or promote a different product." *Blair*, 859 N.E.2d at 1194 (cleaned up). And again, time and discovery will tell.

8

Before moving on to Giovannelli's claim for negligent infliction of emotional distress, it is worth briefly circling back to the applicable statute of limitations for the Publicity Act claim, given the lack of binding authority. The Publicity Act itself does not set forth a specific statute of limitations. Courts in this district have consistently followed *Blair v. Nevada Landing Partnership* in holding that the statute of limitations is one year. *See, e.g.*, *Yeager v. Innovus Pharm., Inc.*, WL 447743, at *4 (N.D. Ill. Feb. 5, 2019); *Martin v. Wendy's International*, 183 F. Supp. 3d 925, 930 (N.D. Ill. 2016) (noting that the weight of authority, including the only decision by an Illinois state court to address the issue, holds that a one-year limitations period applies to IRPA claims). *Blair* reasoned that because the Publicity Act replaced the common law tort of appropriation of likeness, the one-year statute of limitations for the common law tort carries over and applies to the statutory cause of action. *Blair*, 859 N.E.2d at 1189 (2006). The "rights and remedies provided for" in the Publicity Act "supplant" the "rights and remedies" that were "available under the common law," 765 ILCS 1075/60, but otherwise, the Act did "not affect an individual's common law rights as they existed before the effective date of this Act." *Id.*

The Illinois Supreme Court has not had occasion to confirm that the statute of limitations set out in *Blair* is correct, but there are no reasons to suggest that Illinois' highest court would disagree with the intermediate appellate court on this point. The Seventh Circuit has twice abstained from saying what the Illinois Supreme Court would say on this issue because the statute-of-limitations question did not affect the outcome in those cases. *See Martin v. Living Essentials, LLC*, 653 F. App'x 482, 486

9

(7th Cir. 2016) (declining to predict if the Illinois Supreme Court would endorse *Blair* because the answer did not matter); *Berry v. Ford Models, Inc.*, 525 F. App'x 451 (7th Cir. 2013) (declining to decide *Blair* is correct because the Publicity Act claim was frivolous anyway). In one case, the Seventh Circuit remanded for trial on a Publicity Act claim where the district court accepted the general five-year limitations period found in 735 ILCS5/13-205. *See Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2005). Neither the Defendant in that case nor the Seventh Circuit questioned that conclusion on appeal. But the district court's decision in *Toney* that the statute of limitations for the Publicity Act is five years is an outlier to be sure, and *Toney* has not since been cited for that portion of the case. Because the Illinois Supreme Court has not spoken on the applicable statute of limitations and there are no reasons to think that court would decide the question differently from the Illinois Appellate Court, this Court would apply the one-year statute of limitations if it were to decide that issue at this stage. *See Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015). In any event, as discussed earlier, the Court does not yet have reason to apply the statute of limitations.

### B. Negligent Infliction of Emotional Distress

On the claim for negligent infliction of emotional distress, the defense started out by arguing, in its opening brief, that the allegations of duty, breach, causation, and damages were conclusory and that Giovannelli had failed to allege that he was in reasonable fear for his personal safety. Defs.' Br. at 4. Giovannelli countered by pointing out that he was a direct victim of the Defendants' negligent actions—not a

bystander, and so whether he reasonably feared for his safety is not required. And of course he is allegedly a direct victim, not a bystander, and the Complaint never suggested otherwise.

In its reply brief, the defense finally caught on to the fatal flaw in the allegations on this claim. R. 12, Defs.' Reply at 5–8. In Illinois, direct victims of negligently imposed distress must satisfy the so-called "impact rule," as articulated by the Illinois Supreme Court. Giovannelli cannot recover unless his emotional distress "was accompanied by a contemporaneous *physical injury to or impact* on the plaintiff." *Rickey v. Chicago Transit Auth.*, 457 N.E.2d 1, 2 (Ill. 1983) (emphasis added); *accord Lewis*, 561 F.3d at 703 (clarifying that although direct victims do not need to show *lasting* physical manifestations of injury from the negligent conduct under the impact rule, physical injury or impact contemporaneous to the conduct is still required). The "contemporaneous physical injury or impact" rule requires exactly what is says: "some form of physical danger or harm as the catalyst for the resulting emotional trauma." *Barnes v. Anyanwu*, WL 2031798, at *3 (N.D. Ill. July 10, 2009) (cleaned up), *aff'd*, 391 F. App'x 549 (7th Cir. 2010).

Even construed as broadly as possible, the Complaint says nothing close to alleging any kind of initial, distress-triggering physical injury caused by the selling of the posters. That deficiency alone is enough to sink the claim, so the negligent-distress claim is dismissed for failure to state a claim. It is worth noting that Giovannelli's sur-reply does not respond to the defense's briefing on the impact rule, nor does he give any hint how he could fix this deficiency with an amended complaint. Because

11

of the complete absence of a response to this fatal deficiency, the dismissal for those claims is with prejudice.[2]

### IV. Conclusion

The motion to dismiss the Publicity Act claims is denied. The motion to dismiss the claim for negligent infliction of emotional distress is granted, and those claims are dismissed with prejudice. Discovery shall start on both the merits and any defenses (including the statute of limitations), but no early summary judgment motion may be filed without leave of Court. On or before April 14, 2022, the parties shall confer on a proposed discovery schedule, and then the parties shall file a joint status report on April 21, 2022, reflecting the proposed schedule.

But the status report also must set forth the parties' positions and explanation on whether the Complaint properly joins the Defendants in this single case. There is no allegation that the Defendants acted together in any way, so there is a serious question on whether the case should be split into multiple cases for each set of truly related Defendants.

---

[2] If Giovannelli wishes to move for reconsideration on the with-prejudice dismissal, then he may file a motion and the Court will consider it.

The status hearing of April 8, 2022, is reset to April 29, 2022, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the Court will review the status report and set a schedule from there.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2022